# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH CIRULLI and KELLIE ANN CIRULLI, h/w, : Plaintiffs : : v. : : BAUSCH & LOMB, INC., : Defendant : | CIVIL ACTION : : NO. 08-4579 : : : |

JOSEPH CIRULLI and KELLIE ANN     :
CIRULLI, h/w,                                         :       CIVIL ACTION
       Plaintiffs                                :
                                                              :
v.                                                          :       NO. 08-4579
                                                              :
BAUSCH & LOMB, INC.,                        :
       Defendant                              :

## **M E M O R A N D U M**

**STENGEL, J.**                                                                                              **March 3, 2009**

      An international eye health corporation facing a deluge of lawsuits arising from the ill effects of the use of its product moves to stay the instant action pending transfer and consolidation of this action to the multidistrict litigation proceeding in the United States District Court for the District of South Carolina (MDL No. 1785). After review of the parties' memoranda, I will grant the motion.

## I. Background

      Bausch & Lomb, Inc. is an international corporation dedicated to promoting eye health. The pending action stems from the use of one of its products: ReNu with MoistureLoc (ReNu), a brand of contact lens cleaning solution that is sold worldwide. Bausch & Lomb has marketed the product as "a safe and effective multi-purpose contact lens solution which 'cleans, rinses, disinfects, and stores soft contact lenses' and 'makes daily lens care easy.'" (Compl. ¶ 10.)

      In 2006, Bausch & Lomb suspended sales of ReNu after months of public health

reports linked its use to an increase in *Fusarium* Keratitis infections.  Keratitis is an eye infection that can affect the entire cornea.  (Id. ¶ 16.)  Symptoms can include "eye pain, eye discomfort, decrease in vision, light hypersensitivity, eye redness, eye burning, itching, and a white filmy patch in the cornea."  (Id.)  If not properly treated, surgery may be required to remove fungal and/or ulcer lesions; in severe cases, permanent corneal scarring may develop.  (Id. ¶ 17.)  Sales were first suspended in Asia in early 2006.  Increased reports of infections in the United States came soon thereafter.  (Id. ¶¶ 24–25.)  The U.S. Food & Drug Administration and the Centers for Disease Control issued a joint press release on April 10, 2006, reporting the increasing numbers of keratitis infections associated with ReNu.  (Id. ¶ 28.)  On April 13, 2006, Bausch & Lomb suspended domestic shipments of the product, and on May 15, 2006, the company announced a voluntary global withdrawal.

     Suits against Bausch & Lomb began arising across the country.  (Def.'s Motion to Stay at 1 (Document #7).)  On August 14, 2006, the Judicial Panel on Multidistrict Litigation (JPML) issued a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the ReNu-related litigation in the District of South Carolina.  In re Bausch & Lomb, Inc. Contact Lens Solution Products Liability Litigation, 444 F. Supp. 2d 1336 (J.P.M.L. 2006).  The Panel found centralization to be necessary "to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel and the judiciary."  Id. at 1338.  The Panel noted that the actions shared in

common factual allegations regarding "i) the development, testing, manufacturing and marketing of Renu with MoistureLoc; and ii) [Bausch & Lomb's] knowledge concerning Renu with MoistureLoc's alleged adverse effects, in particular, the potential for this product to cause fungal keratitis." Id. Additionally, all of the actions sought damages for personal and/or economic injuries, and "assert[ed] various state law claims, such as negligence, products liability, breach of warranties, and negligent and/or fraudulent misrepresentation." Id.

Plaintiffs, Mr. Joseph Cirulli and Ms. Kellie Ann Cirulli, husband and wife, have brought this action alleging that Mr. Cirulli's use of the ReNu product caused physical and financial injury. Mr. Cirulli was diagnosed as having a keratitis infection of the right eye after developing symptoms consistent with such an infection. (Compl. ¶ 33.) Despite seeking treatment, he has suffered corneal scarring and permanent damage. (Id. ¶ 34.) He continues to have various symptoms, and the vision in his right eye is impaired. (Id. ¶ 35.) Due to the infection, he has incurred medical costs and will continue to do so into the future. (Id.) He has brought claims for breaches of express and implied warranties, failure to warn, negligence, negligence *per se*, negligent misrepresentation, fraud, and deceit. (Id. ¶¶ 36–89.) Ms. Cirulli seeks damages for loss of consortium. (Id. ¶¶ 90–93.)

On December 4, 2008, the JPML issued a Conditional Transfer Order for this case as a potential "tag-along action" to the multidistrict litigation.

## II. Standard of review

The power to stay proceedings is an inseparable facet of the court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Cheyney State Coll. Faculty v. Hufstedler, 703 F.2d 732, 737 (3d Cir. 1983) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). When deciding a motion to stay proceedings pending the resolution of another action in federal court, courts have considered three factors: "(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay." Ciolli v. Iravani, 2008 WL 4412053, at *2 (E.D. Pa. Sept. 23, 2008).

## III. Discussion

I will grant Bausch & Lomb's motion to stay because there are common issues of fact between this action and the MDL, a stay would promote judicial economy, the potential harm to the parties weighs in favor of the defendant, and the duration of the requested stay would not be detrimental.

The factual similarities between this case and the MDL are unmistakable. As the JPML indicated in its Conditional Transfer Order, common questions of fact are shared. (Def.'s Motion to Stay Ex. A (Conditional Transfer Order 38).) The Cirullis' injuries were caused by a keratitis infection allegedly linked to using ReNu. They have claimed that the company was negligent in its manufacture and sale of the product. As in the

MDL, there will likely be discovery requests regarding Bausch & Lomb's development, testing, marketing and manufacturing of ReNu as well as the company's knowledge of the potential adverse effects.

The Cirullis counter that Bausch & Lomb failed to establish that "the common questions of fact are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred. (Pls.' Reply at 5 (citing In re Brandywine Associate Antitrust & Mortg. Foreclosure Litigation, 407 F. Supp. 236 (J.P.M.L. 1976)).)  Though seemingly on point, this statement of the law is wholly irrelevant.  The Cirullis state the standard the JPML has used when ruling on initial motions to transfer and consolidate actions.  See In re Scotch Whiskey Antitrust Litigation, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (denying a motion to transfer and consolidate two actions because there were no unusually complex questions of fact or discovery issues overriding the potential inconvenience to the plaintiffs).

In this case, the decision to centralize has already been made.  As of January, 2009, more than 400 ReNu-related actions have been brought against Bausch & Lomb, and these are gradually being consolidated into the multidistrict litigation proceedings.  The company did not need to meet the high burden that the Cirullis proposed.  Bausch & Lomb merely had to demonstrate factual commonality between the actions, which it has done.

The factual similarity of the cases informs my analysis of the judicial economy

factor. Allowing the Cirullis to proceed may subject Bausch & Lomb to competing pre-trial and discovery rulings. Any schedule or rulings I make now may turn out to have no effect, if and when this transfer is finalized. Proceeding on an individual basis may inexplicably subject Bausch & Lomb to different discovery schedules and court orders when the bases of each litigation are not remarkably distinguishable. Because this litigation would benefit from the orderly, consolidated discovery and motions schedule to be provided in the multidistrict litigation, I find that judicial economy is best promoted by allowing Judge Norton to resolve these issues for all parties at one time.

The plaintiffs contend that a stay would require them to "expend additional time and effort to proceed with this action resulting in substantial, unnecessary and undue prejudice." (Pls.' Reply at 4.) The loss of some time and effort is an initial inevitability when multidistrict litigation is commenced. Once the actions are centralized, however, the plaintiffs will be able to benefit from the large-scale coordination on their end as well as the defendant's. See In re Gen. Adjustment Bureau Antitrust Litig., 375 F. Supp. 1405, 1407 (J.P.M.L. 1973) ("[A]ny additional expense to plaintiff [caused in transferring the case to the multidistrict litigation] will be more than offset by the elimination of duplicative effort which accrues from coordinated or consolidated pretrial proceedings. And it is likely that plaintiff will achieve a savings of expenses by pooling his efforts with the other plaintiffs in the transferee district."). Considering the number of actions that are pending in the district courts, I find that the harm to individual plaintiffs such as the

Cirullis is outweighed by the potential prejudice to Bausch & Lomb and the possible cost and time efficiencies each plaintiff would enjoy from coordinated litigation.

Finally, the duration of the requested stay is unknown. The Conditional Transfer Order implies that transfer will be finalized, but no deadline is provided. Bausch & Lomb has not provided any significant evidence on when the decision could be expected. With no other information presented, I find that this factor lies in favor of denying the stay.

My determination on the duration factor does not compel me to dismiss the motion. It is but one factor I have considered. For the reasons set forth more fully above, I find that the factors of judicial economy and prejudice to the parties clearly outweigh the uncertainty of the pending duration. See, e.g., American Seafood, Inc. v. Magnolia Processing, Inc., 1992 WL 102762, at *1–2 (E.D. Pa. May 7, 1992) (granting the defendant's motion to stay where the length of the stay was uncertain but would only be in effect until the Joint Panel on Multidistrict Litigation had issued a ruling on transferring the matter).

## IV. Conclusion

For the foregoing reasons, I will grant the defendant's motion. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH CIRULLI and KELLIE ANN CIRULLI, h/w, | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 08-4579 |
| | : | |
| BAUSCH & LOMB, INC., | : | |
| Defendant | : | |

## O R D E R

**STENGEL, J.**

**AND NOW**, this 3d day of March, 2009, upon consideration of the defendant's Motion to Stay (Document #7) and the plaintiffs' response thereto, it is hereby ORDERED that the motion is GRANTED. All proceedings in this case are STAYED pending a final decision by the Judicial Panel on Multidistrict Litigation on the transfer of this matter.

BY THE COURT:

 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.